**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 02-23124-CIV-UNGARO/SIMONTON**

**CUBAN CIGAR BRANDS, N.V. and**
**MAX ROHR, INC., et al.,**

        **Plaintiffs,**

**v.**

**TABACALERA POPULAR**
**CUBANA, INC., et al.,**

        **Defendants.**
_____/

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL SUMMARY JUDGMENT

        Presently pending before the Court is Plaintiffs' Motion for Final Summary

Judgment (DE # 136).[1]  After Defendants failed to file a response within the time

provided, Plaintiffs filed a separate Motion for Final Summary Judgment by Default (DE #

135).  This motion is referred to the undersigned Magistrate Judge based upon the

consent of the parties (DE # 122).   Based upon a careful review of the record as a whole,

and for the reasons stated herein, Plaintiffs' Motion for Summary Judgment (DE # 136) is

GRANTED on the merits; and, therefore, Plaintiff's Motion for Summary Judgment by

Default (DE # 135) is DENIED AS MOOT.

        I.        BACKGROUND

        The basic factual underpinning of this matter is not in dispute (DE # 94 ¶¶ 1-5; DE

# 129 at ¶¶ 1-5):

        On November 26, 2003, Plaintiffs obtained a final judgment against Defendants in

the amount of $900,000 (DE # 72).  Plaintiffs have been issued Judgment Lien

_____

        [1]  **Plaintiffs incorrectly filed their Motion for Final Summary Judgment at Docket**
**Entry No. 131, and it was therefore re-docketed by the clerk at Docket Entry No. 136.**

Certificates and unsatisfied Writs of Execution in recognition of the judgment (DE # 94, Exs. A-D).  On April 23, 2008, the Honorable Ursula Ungaro, United States District Judge, granted Plaintiffs' Motion for Proceedings Supplementary and ordered Defendants to appear before the undersigned Magistrate Judge in order to show cause why its valuable trademark rights should not be seized and sold at auction in order to satisfy their judgment debt to Plaintiffs, pursuant to Federal Rule of Civil Procedure 69 and Florida Statute § 56.29 (DE # 102).[2]  The proceedings were continued to permit the parties to engage in settlement negotiations and due to the health problems of Pedro F. Gomez, a Defendant in this case and the President of Tabacalera Popular Cubana, Inc. (DE ## 119, 123).[3]  Plaintiffs filed the instant motion for summary judgment based on their argument that, as a matter of law, Defendants' trademarks must be seized and sold in order to satisfy Defendants' judgment debt.

II.     THE PARTIES' POSITIONS

The parties were unable to resolve their dispute amicably and, therefore, Defendants filed a Response in Opposition to Plaintiffs' Motion for Proceedings

---

[2]  The trademarks at issue include: (1) "POPULAR" trademark and U.S. Registration No. 3,149,225, issued by the U.S. Patent and Trademark Office on September 26, 2006; (2) "TABACALERA CUBANA CUBA 1913 REAL FABRICA DE TABACOS TABACALERA POPULAR CUBANA and Design" trademark and U.S. Registration No. 2,509,096 issued by the U.S. Patent and Trademark Office on November 20, 2001; and (3) "POPULAR and Design" trademark and U.S. Registration No. 3,409,586 issued by the U.S. Patent and Trademark Office on April 8, 2008 (DE # 102 at 2).

[3]  As clarified in a prior Order, these proceedings supplementary primarily concern Defendant Tabacalera Popular Cubana, Inc., which owns the trademarks at issue.  The remaining corporate defendant is a dissolved corporation and the remaining individual defendants either have no interest in the trademarks at issue or do not object to their sale for the purposes of satisfying the judgment debt (DE # 119 at 1 n.1).

Supplementary on July 28, 2008 (DE # 129).⁴  Although Defendants admit the existence of the debt that they owe to Plaintiffs by virtue of the final judgment, they deny that they control the trademark rights at issue or that the trademarks are owned by Tabacalera Popular Cubana, Inc.; they deny that Plaintiffs are entitled to seize and sell the trademark rights; and, they deny that Plaintiffs are entitled to proceedings supplementary, including the recovery of attorneys fees and costs pursuant to Florida Statute § 56.29 (DE # 129 at 1-2).  Specifically, Defendants object to Plaintiffs motion for proceedings supplementary on two grounds:  First, Defendants assert that the affidavit filed in support of Plaintiffs' motion for proceedings supplementary is invalid because it is signed by Plaintiffs' attorney, and not Plaintiffs (DE # 129 at 2-3).  Second, Defendants contend that the trademarks at issue are subject to a license agreement, and that it would violate the license-holder's due process rights to permit the sale of the trademark without allowing the license-holder to be heard (DE # 129 at 3-4).

Plaintiffs filed a reply and motion for final summary judgment, in which they argue that they are entitled to seize and sell Defendants' valuable trademark rights as a matter of law (DE # 131).  First, Plaintiffs insist that the right to proceedings supplementary under Florida law is broadly construed and that there is no support for Defendants' contention that a supporting affidavit cannot be executed by an attorney representing the judgment creditor, rather than the judgment creditor itself (DE # 131 at 8-9).  Second, Plaintiffs criticize Defendants' failure to mention the existence of a license agreement at an earlier date, especially considering the fact that the proceedings had been delayed

---

⁴  Pursuant to this Court's Order (DE # 128), Defendants supplemented their initial response, in which they simply stated "Admitted" or "Denied" with regard to the eight factual allegations contained in Plaintiffs' motion (DE # 127).

and extended numerous times.  Nevertheless, Plaintiffs assert, the license agreement is irrelevant because the licensees are not necessary parties based on the fact that their rights will not be affected by the disposition of these trademarks (DE # 131 at 10-13).

On August 7, 2008, this Court entered an Order advising the parties that all materials relating to the motion for summary judgment would be taken under advisement no sooner than September 4, 2008, and directing Defendants to file any memorandum in opposition to the motion no later than August 25, 2008 (DE # 132).  The Order specifically noted that "Defendants' failure to respond adequately to this Notice within the time provided may result in the Court ruling on Plaintiffs' Motion without considering Defendants' Response" (DE # 132 at 3).  Defendants have not responded to date.

### III.   LEGAL STANDARDS

Pursuant to the Federal Rules, "[t]he procedure . . . in proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of a state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).  There is no dispute that Florida's proceedings supplementary statute governs the instant dispute.  *See* Fla. Stat. § 56.29.  The statute is equitable in nature and should be interpreted liberally to ensure that "'a judgment creditor [receives] the most complete relief possible . . .' without the necessity of initiating a separate action."  *MCI Telecomms Corp. v. O'Brien Marketing*, 913 F. Supp. 1536, 1539 (S.D. Fla. 1995) (citing *Regent Bank v. Woodcox*, 636 So. 2d 885, 886 (Fla. 4th DCA 1994)).  The Court is authorized to "enter any order required to carry out the purpose of this section to subject property or property rights of any defendant to execution," Fla. Stat. § 56.29(9).  Under Florida law, intangible assets, such as trademark rights, are amenable to execution under the statute.  *See Continental Cigar Corp. v. Edelman & Co.*, 297 So. 2d

4

957, 957-58 (Fla. 3d DCA 1981).

Summary judgment may be entered to grant the relief Plaintiffs seek in their motion for proceedings supplementary, including the seizure and sale of Defendants' valuable trademark rights.  *See Riley v. Crossings Community Church, Inc.*, 881 So. 2d 685, 685 (Fla. 5th DCA 2004); *In re Alexander*, No. 4-90-6274, 1995 WL 236984, at *2 (Bankr. D. Minn. April 21, 1995).  Summary judgment is appropriate where "the pleadings, depositions answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine factual dispute as to a material issue in the case.  *See Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).  In addition, the evidence must be viewed in the light most favorable to the non-moving party, *id.*, which is entitled to a full opportunity to conduct discovery and rebut the motion for summary judgment by "present[ing] evidence from which a jury might return a verdict in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The question is not whether there is "literally no evidence" to support the non-moving party's position, "but whether there is any [evidence] upon which a jury could properly proceed to find a verdict" in favor that party.  *Id.* at 251 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  It is not permissible to grant a motion for summary judgment by default.  *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

IV.    ANALYSIS

At the outset, the undersigned notes that, despite Defendants' suggestion otherwise, Tabacalera Popular Cubana, Inc. is listed as the owner of the trademarks at

issue (DE # 94 at ¶ 6; DE # 129 at ¶ 6).  First, Plaintiffs provided copies of the trademark registrations, which are issued in the name of Tabacalera Popular Cubana, Inc. (DE # 131, Ex. G).  Second, Defendants did not dispute this fact when it was addressed at the May 21, 2008 status conference before the undersigned Magistrate Judge (DE # 119 at 1 n.1).  Defendants' conclusory denial of this fact in their briefs, which is not only unsupported but clearly *refuted* by the evidence in the record, is not sufficient to defeat a summary judgment motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Searcy v. Singletary*, 894 F. Supp. 1565, 1569 (M.D. Fla. 1995); Fed. R. Civ. P. 56(e).

A.    Affidavit

In addition, Defendants' argument that the affidavit in support of Plaintiffs' motion for proceedings supplementary is invalid because it was signed by Plaintiffs' attorney is meritless and Defendants have not cited any legal authority to support their position. The statute simply states that, as a prerequisite to proceedings supplementary, the judgment holder must "file an affidavit" stating that the "person or entity holds an unsatisfied judgment."  Fla. Stat. § 56.29(1).  Thus, pursuant to the statute, the judgment holder must file "*an* affidavit," but there is no express statutory language requiring the affidavit to be based on the judgment holder's own, personal knowledge.  *See, e.g., General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1496 n.22 (11th Cir. 1997) ("[T]he two jurisdictional prerequisites for supplementary proceedings are (1) an unsatisfied writ of execution, and (2) *an* affidavit averring that the writ is valid and

unsatisfied.") (emphasis added).  Not only does Defendants' allegiance to this purported

technicality conflict with the broad remedial purpose of the statutory scheme, but the

distinction that they attempt to advance is especially absurd in a case like this, where

there is no reason to conclude the affidavit of a corporate representative would be any

more reliable than an affidavit of the corporation's attorney and an officer of the Court.

Nonetheless, in an abundance of caution, Plaintiffs have completed the pro forma

exercise of producing an affidavit signed by its corporate representative, which is

materially identical to the original affidavit signed by Plaintiffs' counsel, and which

Defendants have not challenged in a responsive brief (DE # 131, Ex. H).  In sum, the

undersigned concludes that Defendants' position is not well founded; and, Plaintiffs

have cured any possible jurisdictional defect by submitting an uncontroverted affidavit

signed by their corporate representative in support of their motion for proceedings

supplementary.[5]

     B.    <u>Third Party Licensees</u>

     Finally, the fact that a third party holds a pre-existing license to use a trademark

at issue in this case does not preclude the issuance of summary judgment in Plaintiffs'

---

[5]  Defendants' interpretation of Fla. Stat. § 56.29 is not merely the result of an overly literal reading of the statute, but rather a complete *mis*reading of it.  While the statute is silent as to the identity of the individual who must *sign* the affidavit, it does specify that the affidavit must be *filed* by the judgment holder.  Of course, it would be futile to argue that the statute obligates the corporate representative to personally deliver the affidavit to the clerk's office for filing instead of allowing its counsel to file it, but that is the result that Defendants would be constrained to defend if they were genuinely interested in construing the statute according to its literal terms.  Thus, reading the statute as a whole, it is clear that the term "judgment holder" simply identifies the party at interest (i.e., in distinction to the "judgment debtor," for example), without specifying who may attest to the facts set forth in the affidavit required to initiate proceedings supplementary.  *See Castillo v. Vlaminck de Castillo*, 771 So. 2d 609, 611 (Fla. 3d DCA 2000).

favor.[6]  Plaintiffs correctly point out that Defendants failed to mention the existence of this license agreement in the three months in which this motion was pending, during which time Defendants' counsel appeared at three separate status conferences before the undersigned Magistrate Judge and said nothing to correct their previous statements, which clearly implied that, so long as the parties could work out a mutually acceptable settlement, there would be no external barriers to transferring the trademark rights to Plaintiffs.  Regardless of this troubling fact, the undersigned concludes that the entry of summary judgment will not affect the due process rights of the third-party licensee in this case, Virginia Carolina Corporation, Inc. ("VCC").

As a preliminary matter, Defendants' unusual due process objection puts this case on a unique procedural footing.  Typically, it is the judgment creditor (like Plaintiff in this case) who seeks to implead third parties who have improperly acquired the judgment creditor's property or assets in an effort to shield those assets from execution by way of a fraudulent conveyance, for example.  In such a run-of-the-mill scenario, Florida law requires the impleader of a third party if the third party claims a property right adverse to both the plaintiff and the defendant; or if the plaintiff seeks to obtain property that has been transferred to the third party.[7]  *See* 24A Fla. Jur. 2d Executions §

_____

[6]  Although it is not clear from the parties' briefs, the license agreement appears to pertain to "POPULAR" trademark and U.S. Registration No. 3,149,225, issued by the U.S. Patent and Trademark Office on September 26, 2006, as well as "POPULAR and Design" trademark and U.S. Registration No. 3,409,586 issued by the U.S. Patent and Trademark Office on April 8, 2008 (which are identified in the license agreement as U.S. Application Serial Nos. 76612016 and 76612137, respectively).  *See* (DE # 129 at 11); Trademark Applications and Registrations Retrieval (TARR) Home Page, *at* http://tarr.uspto.gov/ (last accessed Aug. 28, 2008).

[7]  Federal Rule of Civil Procedure 19(a) requires the impleader of "any person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction" if:

94 (2008) (citing *Richard v. McNair*, 162 So. 483, 488 (Fla. 1935); *Art Advertising Co. v. Associated Press*, 340 So. 2d 1291 (Fla. 2d DCA 1977)).  Due process does not, however, require the impleader of every party whose rights may affected by proceedings supplementary, no matter how incidental those potential effects are.  Indeed, Defendants' approach disregards courts' traditional reluctance to "draw [third parties] into legal proceedings to require them to explain and justify ownership of their assets without any record basis for connecting them to the judgment debtor" by impleading them into proceedings supplementary.  *See Exeltech, Inc. v. Williams*, 579 So. 2d 850, 853 (Fla. 5th DCA 1991) (Griffin, J., concurring in part and dissenting in part).  Since these proceedings supplementary adjudicate the ownership rights associated with Defendants' trademark, there is no need for this Court to issue an Order, *sua sponte*, compelling third party licensees to appear as parties in the proceedings where the judgment creditor has not requested their appearance and where the adjudication of the ownership rights will not affect the rights of the licensee.

  The undersigned concludes that VCC's license to use the trademarks at issue in the case at bar does not constitute an interest in the property rights to be adjudicated in the proceedings supplementary such as to require its impleader in this action.  While the parties did not provide, and the undersigned could not find, any case that is squarely on

---

  (A) in that person's absence, the court cannot accord complete relief among existing parties; or

  (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

point, there are analogous authorities that offer helpful guidance to resolving the matter at hand.  In the patent context, for example, a third-party licensee is an indispensable party to an infringement action only if the patent has been "assigned" to the third party, but not if the patent has been merely "licensed" to the third party.  Thus, in *Dr. Fred Hatfield's Sportstrength Training Equipment Co. v. Balik*, 174 F.R.D. 496, 498-500 (M.D. Fla. 1997), an exclusive licensee who "could not enter into subleases, assign the agreement or enter into exclusive distributorship agreements without the consent of the Licensor" was considered a mere "licensee," not an "assignee," and was therefore not an indispensable party to an infringement suit.  Whereas VCC would arguably be an indispensable party to the proceedings supplementary if the license agreement constituted an "assignment" of Defendants' trademark rights, a review of the license agreement reveals that only a "license" to use the trademark has been conveyed and, thus, VCC's property rights are not at stake here.  *See ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597-99 (5th Cir. 2003).  VCC does not own anything by virtue of the license agreement; it merely possesses the right to use Defendants' trademark.  At most, VCC's rights may be tangentially affected as a consequence of the proceedings supplementary, but there is nothing in the record to indicate that any of VCC's property rights will be directly altered if the trademark is seized from Defendants and sold to the highest bidder at auction.   Significantly, under the license agreement, Defendants are entitled to sell or transfer their ownership rights in the trademark without notifying VCC in advance or obtaining VCC's consent.  Thus, since Defendants are free to sell their trademark rights at will for private pecuniary gain, there is no reason to require VCC's involvement in connection with the sale of those trademark rights for the purpose of satisfying the judgment debt that Defendants owe to Plaintiffs.

C.    <u>Attorneys Fees and Costs</u>

The Florida Statute governing proceedings supplementary provides that:

Costs for proceedings supplementary shall be taxed against the defendant as well as all other incidental costs determined to be reasonable and just by the court including, but not limited to, docketing the execution, sheriff's service fees, and court reporter's fees.  Reasonable attorney's fees may be taxed against the defendant.

Fla. Stat. § 56.29(11).  Therefore, this Court retains jurisdiction for the purpose of ruling on a properly documented motion for attorney's fees and costs filed by Plaintiffs in accordance with the Federal and Local Rules within thirty days from the entry of this Order.  It is, accordingly,

ORDERED AND ADJUDGED that Plaintiffs' Motion for Final Summary Judgment (DE # 136) is GRANTED.  The United States Marshal is directed to seize the following trademarks for sale at judicial auction to be applied toward the satisfaction of Plaintiffs' November 26, 2003 Final Judgment:

(1)    "POPULAR" trademark and U.S. Registration No. 3,149,225, issued by the U.S. Patent and Trademark Office on September 26, 2006;

(2)    "TABACALERA CUBANA CUBA 1913 REAL FABRICA DE TABACOS TABACALERA POPULAR CUBANA and Design" trademark and U.S. Registration No. 2,509,096 issued by the U.S. Patent and Trademark Office on November 20, 2001; and

(3)    "POPULAR and Design" trademark and U.S. Registration No. 3,409,586 issued by the U.S. Patent and Trademark Office on April 8, 2008.  It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion for Final Summary

Judgment by Default (DE # 135) is **DENIED AS MOOT** based upon the fact that Plaintiffs' motion for summary judgment is granted on the merits and the fact that it is impermissible to grant summary judgment by default. *See United States v. One Piece of Real Property Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). It is further

**ORDERED** that the status conference previously set for September 17, 2008, and the evidentiary hearing previously set for September 23, 2008, are canceled.

**DONE AND ORDERED** in chambers in Miami, Florida, on September 16, 2008.

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
The Honorable Ursula Ungaro,
    United States District Judge
All counsel of record